S.L., a minor by and through his
guardian and next Friend, K.L., et al.,          Case No.  1:07cv986

       Plaintiffs,                    Judge Michael R. Barrett

   vs.

Peirce Township Board of Trustees, et al.,

       Defendants.

## ORDER

This matter is before the Court pursuant to Defendant the Honorable Judge Stephanie A. Wyler's[1] motion to dismiss and (Doc. 15).  Plaintiffs' filed a memorandum in opposition (Doc. 18) to which Defendant Judge Wyler replied (Doc. 21).  Plaintiffs' were permitted to filed a sur-reply (Doc. 24).  A hearing was held on October 8, 2008 before the Honorable S. Arthur Spiegel.  This Court has reviewed the arguments set forth by counsel at that hearing.  In addition, Plaintiffs have filed a motion for leave to file a second amended complaint (Doc. 45).  This motion has been opposed by the Defendants (Docs. 48, 49, 50).

### I.      BACKGROUND

The following facts are alleged in Plaintiffs' amended complaint.  On the evening of December 4, 2006 Defendant Officer David Homer was dispatched to the home of S.L.'s mother[2].  She reported to Officer Homer that she had discovered two burnt popsicle sticks within S.L.'s bedroom (Doc. 4, ¶21).  There was no damage to the

---

[1]Clermont County Court of Common Pleas, Juvenile Division.

[2]S.L. is a minor.

property of S.L.'s mother and no evidence that the two popsicle sticks, which were charred at some unknown time, created a strong possibility that any damage would occur to the property or that any physical harm would be done to anyone (Id., ¶24-30). Approximately fifteen minutes later, Officer Homer placed S.L. under arrest without a warrant as an alleged delinquent based upon the allegation that S.L. had committed the criminal offense of aggravated arson, a felony of the first degree. (Id., ¶34). Plaintiffs allege that Officer Homer lacked probable cause and that his actions were the result of inadequate training (Id., ¶35-36, 41). Plaintiffs further allege that Defendant Chief of Police James Smith and Pierce Township have an official policy, practice and custom of being excessively and overly aggressive in charging criminal offenses. (Id., ¶37-40).

Instead of being released to his father, K.L.[3], S.L. is brought to the Clermont County Juvenile Detention Center (sometimes referred to as "Detention Center") and turned over to the custody of Defendant E. Shawn Bartley, Youth Leader at the County Juvenile Detention Center. (Id., ¶44-45). Officer Homer than prepared a Complaint to charge S.L. as a delinquent child based upon the allegation of having committed aggravated arson, a felony of the first degree. (Id., ¶46). The jurat to the Complaint was signed by Defendant Bartley under the putative authority of Defendant Judge Wyler as judge and *ex officio* clerk of the Clermont County Juvenile Court. (Id., ¶48). In doing so, Defendant Bartley declared and represented that the Complaint was sworn to before him. (Id., ¶49). Plaintiffs allege that Defendant Bartley had no authority to administer an oath to Officer Homer and that it is the official policy, custom, and practice of Clermont

---

[3]K.L. who has custody of S.L., is divorced from S.L.'s mother.

County, Judge Wyler and Defendant Thomas DelGrande, Superintendent of the County Juvenile Detention Center, to allow those not so authorized to administer oaths. (Id., ¶50-56). Additionally or alternatively, Plaintiffs allege that Defendant Bartley lacked adequate training which constitutes a deliberate indifference to the rights of people with whom staff of Clermont County come in contact with. (Id., ¶57). Plaintiffs allege that because the Complaint was not properly given under oath, the Juvenile Court lacked subject matter jurisdiction over S.L. and that Judge Wyler should have known that the Complaint was a sham upon inspection of it (Id., ¶60-61).

Although there was no factual basis to support it, Defendant Bartley completed a Detention Report in which he indicated that S.L. was to be detained because he "may be [sic] abscond or be removed from the jurisdiction of the court." (Id., ¶64-65). Plaintiffs' allege that it is the official policy, custom, and practice of Clermont County, Judge Wyler and Defendant DelGrande that officers indicate reasons for detention regardless of whether there is a factual basis that exists to support such a declaration. (Id., ¶66). In addition, or alternatively, Plaintiffs allege that Defendant Bartley was inadequately trained. (Id., ¶67).

The next morning, December 5, 2006, at 11:00am, S.L. appeared before Judge Wyler. At no time during that hearing was any consideration or evaluation given as to whether there was probable cause to hold, detain or arrest S.L. (Id., ¶72-73). Instead, that hearing was conducted more like an arraignment and a guardian *ad litem* was appointed (Id., ¶74). Judge Wyler stated that it was "standard operating procedure" to continue to detain S.L. until an evaluation could be conducted despite K.L.'s request that his son be released to him. She set a pre-trial hearing for December 13, 2006. (Id.,

¶75-77).  At no time had an arrest warrant been issued. (Id., ¶80).  Plaintiffs allege that

S.L.'s detention was the result of the official policy, custom, and practice of Clermont

County, Judge Wyler and Defendant DelGrande to authorize the arrest and detention

without the issuance of an arrest warrant. (Id., ¶82).   In addition, or alternatively,

Plaintiffs allege that S.L's detention was the result of inadequate training.

On Thursday, December 7, 2006, the appointed guardian *ad litem* and counsel

for K.L. each filed a motion requesting that S.L. be released. (Id., ¶90-91).  Although

Rule 7(G) requires a hearing on such a motion to be held within 72 hours, Judge Wyler

did not hold a hearing until Monday, December 11, 2006 at 11:30am. (Id., ¶92-93).  At

the hearing, the prosecutor acknowledged the lack of evidence and amended the

charge to one of simple unruliness and S.L. was released. (Id., ¶94-97).   Ultimately,

even the unruly charge was dismissed (Id., ¶99).

Plaintiffs allege a violation of the Fourth Amendment and Fourteenth Amendment

since the arrest and detention was not based upon probable cause or the issuance of

an arrest warrant. (Id., ¶100-108).  Plaintiffs specifically allege deprivation of civil rights

in violation of 42 U.S.C. §1983, false arrest/false imprisonment, malicious prosecution,

negligent supervision, and loss of filial consortium.

## II.   ANALYSIS

### A.   Motion to Dismiss Standard

Defendant Judge Wyler brings her Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for

failure to state a claim upon which relief can be granted.

A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002) (explaining that a Rule 12(b)(6) motion may be decided only after establishing subject matter jurisdiction since the Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction), *citing Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction. *Pritchard*, 210 F.R.D. at 592. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Under Rule 12(b)(6), "a plaintiff's obligation is to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1964-65 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* at 1964-65 (citations omitted) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**B.    Subject matter jurisdiction**

Judge Wyler argues that this Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. *Rooker-Feldman* is a doctrine with only limited application. *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006). The doctrine gets its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As the Supreme Court has explained: "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). In both *Rooker* and *Feldman*, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id*.

The Sixth Circuit has explained that the key inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury which the plaintiff alleges in his or her federal complaint:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). However, there are exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself. *Id.*, *citing Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) (finding that the plaintiffs' challenge to a county board of election's refusal to tally certain absentee ballots was in fact a challenge to the state court judgment that the ballots were invalid). As the Sixth Circuit has explained: "The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *Id.* While "these independent claims may deny a legal conclusion of the state court . . . this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *Id.* at 392.

Upon a close review of the Amended Complaint it appears that the source of, at least some of, Plaintiffs' injuries is the December 5, 2006 decision of Judge Wyler and her decision not to have a hearing within 72 hours of the filing of the motions for S.L.'s release. However, at the hearing before Judge Spiegel, Plaintiffs' counsel asserted that any claims against Judge Wyler are limited to the actions that occurred between the arrest of S.L. and his December 5, 2006 appearance since Judge Wyler is entitled to

judicial immunity for the actions that took place thereafter. Therefore, taking the above into consideration, the source of the injury is the process or policy that led up to S.L.'s initial appearance before Judge Wyler and not the decision of Judge Wyler. Judge Wyler relies on *Pancake v. Mcowan*, 2003 U.S. App. LEXIS 8427 (6th Cir. 2003)(unpublished) for the proposition that this court does not have jurisdiction since there is no written policy that the Court can review. In *Pancake*, the court found that the it could not discern if the policy exists or what the judges' practice is without conducing an in-depth review of state court decisions. *Id.* at 6-8. This case is inapplicable for two main reasons, first, it was decided before the Supreme Court further explained the *Rooker-Feldman* doctrine in *Exxon* and, most importantly, the policy at issue in this case would not require this Court to review other decisions' of Judge Wyler. Thus, the Court finds that Plaintiffs' claims against Judge Wyler as they relate to the events that led up to the December 5, 2006 appearance are not barred by the *Rooker-Feldman* doctrine, and the Court has subject matter jurisdiction over those claims. However, the *Rooker-Feldman* doctrine is applicable to Plaintiffs claims as they relate to events that took place during and after the December 5, 2006 appearance. The Court does not have subject matter jurisdiction over those claims as they relate to Judge Wyler. As such, those claims are dismissed.

**C.   Judicial Immunity**

Defendant Judge Wyler argues that she is entitled to judicial immunity for her actions as presiding judge. Plaintiffs do not dispute this argument and, in fact, set forth that they are not bringing claims against Judge Wyler in her role as "judge" but as to her

administrative role as being in charge of the Clermont County Juvenile Detention Center, a role which Plaintiffs' allege is non-judicial.  See Doc. 18, p 8-9.  It is well settled law that judges, including state judges, enjoy judicial immunity from suits arising out of the performance of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553 (1967); *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983).  Therefore, the Court finds that Judge Wyler is entitled to judicial immunity for her actions that are deemed judicial in nature, specifically, the December 5, 2006 hearing and the alleged delay in not setting the December 11, 2006 hearing within 72 hours of the filing of the motions.  The issue of her administrative roles will be addressed later in this opinion.[4]

Defendant Judge Wyler also argues that Plaintiffs' §1983 claims against her, based on her conduct as presiding judge, must fail as a matter of law.  However, since the Court found above that Judge Wyler is entitled to judicial immunity on those claims, it will not address this argument.

### D.    Individual Capacity/Qualified Immunity

The crux of Plaintiffs' amended complaint against Judge Wyler appears to be based on her role as the alleged final policymaking authority for the Clermont County Juvenile Detention Center under §1983 and Negligent Supervision claims.  Defendant Judge Wyler first addresses the claims against her in her individual capacity.  Judge Wyler argues that an individual capacity suit will challenge "a public official's discretionary acts taken against the plaintiff in one particular instance of unconstitutional behavior" as opposed to an official capacity suit which challenges "a

---

[4]Judge Wyler does not argue that she is entitled to judicial immunity for her administrative actions.

9

public official for enforcing against the plaintiff an unconstitutional policy or custom of the governmental entity for which the official works (i.e., non-discretionary behavior)." Doc. 15, p 13-14. She goes on to argue that Plaintiffs have failed to sufficiently allege facts that rise to the level of Section 1983 liability against her individually.

Plaintiffs do not address this argument and instead focus on the allegations against Judge Wyler in her official capacity and whether she is entitled to Eleventh Amendment immunity. Based upon a review of the Amended Complaint and Plaintiffs failure to address this issue, the Court finds that Plaintiffs did not bring claims against Judge Wyler individually. However, if such allegations were made, those are hereby dismissed since Plaintiffs failed to sufficiently set forth such allegations against Judge Wyler in her individual capacity. Plaintiffs have not set forth that Judge Wyler actively participated in the alleged unconstitutional acts. *See Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988). Regardless, Judge Wyler would be entitled to qualified immunity for such claims.

Qualified immunity will generally shield government officials from individual liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing*, *Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved "clearly established constitutional rights of which a reasonable person would have known."

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting*, *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred. *Id.* "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *quoting*, *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998). Once a court finds that the right is clearly established, the court must next decide "whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights." *Id.* at 1008. The test is an objective standard, and the defendant's subjective intent is irrelevant. *Id.*

While defendant bears the burden of pleading the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002), *citing*, *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*, *citing*, *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir.1991).

Plaintiffs have not met their burden here.[5] They have failed to show that the allegations against Judge Wyler violated clearly established law.

Defendant Judge Wyler again argues that Plaintiffs' §1983 claims against her, in her individual capacity, must fail as a matter of law. However, since the Court found above that Plaintiffs did not bring claims against Judge Wyler individually and, even if Plaintiffs did, Judge Wyler is entitled to qualified immunity on those claims, it will not address this argument.

## E.    Sovereign Immunity

As to the allegations against Judge Wyler in her official capacity, Judge Wyler contends that the claims against her are barred by the Eleventh Amendment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. There are exceptions to the application of the Eleventh Amendment, however, they are not applicable in this matter. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. Mich. 2005)(The States' federal-court immunity comes with a host of exceptions). The Supreme Court has held that state governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment. *Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977); *Moor v. Alameda*, 411 U.S. 693, 717-21

---

[5]Although the Court recognizes that Plaintiffs likely failed to meet this burden because they are not bringing claims against Judge Wyler in her individual capacity.

(1973); *accord Hutsell v. Sayre*, 5 F.3d 996, 998-99 (6th Cir. 1993), cert. denied, 510 U.S. 1119 (1994).

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Ky. v. Graham*, 473 U.S. 159, 165-166 (U.S. 1985) *citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id. citing Brandon v. Holt*, 469 U.S. 464, 471-472 (1985).[6] Such an action is not against the official personally, but is against the real party in interest, the entity. *Id.* Therefore, any award of damages would come, not from the official personally but from the government entity itself. *Id.*

Judge Wyler contends that she, as Common Pleas Court Judge, is an arm of the state and immune under the Eleventh Amendment. Plaintiffs disagree arguing that she is being sued based upon her responsibilities as the final policymaking authority for the Detention Center as well has being responsible for the administration and operation of the Detention Center. Based upon the allegations in the Amended Complaint and the arguments made by Plaintiffs, it is clear that Plaintiffs intend for the entity that Judge Wyler represents to be that of the Detention Center.[7] Now the Court must determine if

---

[6]Neither party contents that the Detention Center did not receive notice nor was given an opportunity to respond. The Court is not making a determination on that issue.

[7]However, if Plaintiffs intended to sue Judge Wyler in her official capacity as a Common Pleas Court Judge, she would be entitled to Eleventh Amendment immunity. This issue has recently been decided by another Court in this district, in which this Court agrees. Magistrate Judge Kemp and Judge Marbley recently found that the

the Detention Center is an arm of the state. Judge Wyler contends that it falls under the umbrella of the juvenile court and as such is an arm of the state. In support of her argument Judge Wyler relies on *Mumford v. Basinski,* 105 F.3d 264, 267-268 (6th Cir. 1997) where the Sixth Circuit found that the court of commons pleas was an arm of the state. However, *Mumford* was decided without taking into consideration who would pay for a judgment against the court. *See Alkire v. Irving*, 330 F.3d 802, 811-812 (6th Cir. 2003).[8]

The Sixth Circuit employs a multi-factor test to determine whether an entity is an arm of the state, such that it benefits from Eleventh Amendment immunity. *Ernst v. Rising*, 427 F.3d 351, 359-60, 364-65 (6th Cir. 2005) (en banc) (citations omitted). These factors are: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions are akin to traditional state or local functions. *Id.* (citations omitted). The entity claiming Eleventh

---

Franklin County Common Pleas Court and the Franklin County Court of Appeals are arms of the state. *See Howard v. Supreme Court*, 2007 U.S. Dist. LEXIS 79354 (S.D. Ohio Oct. 25, 2007) adopted in its entirety by *Howard v. Ohio Supreme Court*, 2008 U.S. Dist. LEXIS 6437 (S.D. Ohio Jan. 14, 2008)("This Court will take the strong suggestion contained in S.J. [v. Hamilton County, 374 F.3d 416 (6th Cir. 2004)] and recommend, based on the reasoning therein, that the Franklin County Court of Common Pleas and the Franklin County Court of Appeals also be held immune from suit under the Eleventh Amendment.")

[8]Judge Wyler relies on several other cases that did not apply the factors set forth in *Ernst v. Rising*, 427 F.3d 351, 359-60 (6th Cir. 2005). As such, those cases have not been considered by this Court.

Amendment immunity bears the burden to prove such.  *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

 (1) <u>State's obligation to pay any judgment that would accrue against the entity</u>.

 Judge Wyler has set forth no evidence as to who would pay any judgment against the Detention Center other than to assert that "the Supreme Court of Ohio has maintained a policy of professional liability insurance on behalf of all Ohio judges...[insuring] against the potential award of damages arising from actions taken by the judge in his or her official capacity."  Doc. 21, p13.  There is nothing to indicate whether this policy would cover a judge's action in an administrative capacity or if it would cover a judgment against the Detention Center.

 The analysis here seems to this Court to be different that the typical "arm of the state" inquiry.  The Court must determine if the Detention Center is a part of the juvenile court or the county.  If it is part of the juvenile court than the logical conclusion is that the state would pay any judgment but if it is a part of the county then the county would likely pay the judgment.  However, without more than the sections of the Revised Code cited by the parties, this Court can not make that determination at this stage in the litigation.  Judge Wyler has failed to meet her burden on this factor.

 (2) <u>How the state's statutes and courts have referred to the entity and the degree of control the state has over the entity</u>.

 The Ohio Revised Code, at Section 2152.41(A), states that "Upon the recommendation of the judge, the board of county commissioners shall provide, by purchase, lease, construction, or otherwise, a detention facility that shall be within a convenient distance of the juvenile court."  In addition, O.R.C. Section 2152.42(A),

states that "Any detention facility established under section 2152.41 of the Revised Code shall be under the direction of a superintendent. The superintendent shall be appointed by, and under the direction of, the judge or judges ... The superintendent serves at the pleasure of the juvenile court ... ."  Since the juvenile court is part of the common pleas court and thus, part of the state judicial system, this favors sovereign immunity.

In addition, the district court in *Oswald v. Lucas County Juvenile Detention Ctr.,* 1999 U.S. Dist. LEXIS 8435 (N.D. Ohio Apr. 28, 1999)(unpublished) held that a county juvenile detention facility is part of the county juvenile court which is a political subdivision of the state.  Furthermore, the *S.J.* Court opined that this factor favors sovereign immunity in cases involving a juvenile detention facility under §2152.41.  *S.J. v. Hamilton County*, 374 F.3d 416, 423 (6th Cir. Ohio 2004).  Finally, as set forth in *S.J., supra* and O.R.C. §2152.43(E)*,* the Juvenile Court controls the admission, removal and transfer of juveniles to and from the detention facility.  These additional facts lend further support that this factor favors immunity.

(3) <u>Whether state or local officials appoint the entity's board members</u>.

The Ohio Revised Code sets forth that the judge appoints the superintendent, that the superintendent shall be under the direction of the judge, and the superintendent shall serve at the pleasure of the juvenile court. O.R.C. Section 2152.42(A).  This center, being a single county detention facility (as opposed to a district detention facility), does not have a board of trustees but answers to the juvenile court.  See O.R.C. §2152.42(A) and §2152.44.  In addition, the superintendent appoints all employees of the facility who salaries are provided in O.R.C. §2151.13.  O.R.C.

§2152.42(B). However, it is the board of county commissioners, upon recommendation of the judge, who must purchase, lease, construct, or otherwise provide the detention facility. O.R.C. §2152.41. In addition, the expenses incurred in maintaining the facility shall be paid by the county, however, the county can request assistance from the department of youth services as set forth in O.R.C. §5139.281. O.R.C. §2152.42(B). Without more evidence, this factor is evenly balanced for and against immunity.

(4) <u>Whether the entity's functions are akin to traditional state or local functions</u>.

This is also an evenly balanced factor at this point in time. The city, county and state all operate detention style facilities so the Detention Center's functions are equally akin to state and local functions.

Therefore, based upon what little evidence is currently before the Court, at this time, the Court is unable to make a determination on the Eleventh Amendment immunity issue.

**F.    Merits of Plaintiffs' Claims**

If the Court were to find that the Detention Center was not an arm of the state but, in fact, an arm of the county, then it could be subject to Plaintiffs' claims and the Court must determine if Plaintiffs have adequately set forth a claim for relief against Judge Wyler in her official capacity. Although it is unclear exactly in what capacity Judge Wyler is being sued, Plaintiffs have said that it is in her position as "final policymaking authority" for the Detention Center. (See. Doc. 4, ¶13). Presumably, because the Ohio Revised Code provides that "the superintendent shall be appointed by, and under the direction of the judge..." and that "the superintendent serves at the pleasure of the juvenile court." O.R.C. §2152.42.

17

The claims that remain against Judge Wyler, in her official capacity, are Plaintiffs' 42 U.S.C. §1983 claim and their negligent supervision claim.

1.  Section 1983 Claim

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) and *United Of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6ht Cir. 1992).[9]

The Sixth Circuit has held that §1983 liability must be based on more than respondeat superior, or the right to control employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. Ky. 1999) *citing Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982). "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a

_____

[9]42 U.S.C. §1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id. quoting Hays v. Jefferson County, Ky.,* 668 F.2d at 874. Here, taking the allegations in the amended complaint as true, which the Court is required to do at this juncture, the Court finds that Plaintiffs adequately stated a claim for relief. Plaintiffs state that a complaint alleging a child be delinquent must be made under oath pursuant to Rule 10(B)(3) of the Ohio Rules of Juvenile Procedure (Doc. 4, ¶50), that only Judge Wyler and the magistrate judges are authorized to administer such oaths (Id. at ¶55), and that Judge Wyler allowed other individuals not authorized to administer oaths to do so. Plaintiffs allege that by doing so, there is no determination as to probable cause. *See Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)(prosecution without probable cause is a violation of the Fourth Amendment, and is actionable under section 1983). Plaintiffs further allege that Judge Wyler knew of this policy, custom, or practice since she did not administer the oath and had not authorized Defendant Bartley to do so (Id. at ¶¶56, 61, 99-112). Additionally, or in the alternative, Plaintiffs allege that Judge Wyler failed to adequate train the employees of the Detention Center. (Id. at ¶57).[10]

Plaintiffs also allege that the Detention Center uses a form called a "Detention Report" which is required to declare the basis or reason for the detention pursuant to

---

[10]Plaintiffs do allege that because an employee without authorization administered the oath, or at least signed off on the Complaint, that the juvenile court lacked subject matter jurisdiction. This argument fails as the juvenile court had jurisdiction over S.L.'s arson case. See *Stump v. Sparkman*, 435 U.S. 349 (1978). Also, in a footnote in Plaintiffs' brief, they state that such allegation is "not the premise of the civil rights claim against Defendant Wyler" but only to give "a more complete and fuller picture of the entire dealings between the parties." Doc. 18, FN 6.

Rule 7(A) of the Ohio Rules of Juvenile Procedure. Plaintiffs allege that this form was filled out by Defendant Bartley without any regard to the truth or falsity of the reasons set forth for the detention or any determination as to probable cause. Plaintiffs allege that Bartley's actions were the result of a policy, custom, or practice of Judge Wyler or in the alternative, that Judge Wyler failed to train adequately. Doc. 4, ¶¶65-67. However, as to this allegation, Plaintiffs have not averred that Judge Wyler authorized, approved, or knowingly participated in or authorized the preparation of the Detention Report as alleged. Thus, Plaintiffs have failed to adequately allege liability under §1983 as to this claim against Judge Wyler.

2.   Negligent Supervision

Although Judge Wyler acknowledges that Plaintiffs are bringing a negligent supervision claim against her, she fails to move to dismiss this claim on the merits in her motion (see Doc. 15, p13). As such, the Court will not address it.

3.   Loss of Filial Consortium

Judge Wyler finally argues that since Plaintiffs' substantive claims fail that this derivative state law claim must also fail. Plaintiffs do not address this issue. However, since some of Plaintiffs' claims survive this motion to dismiss, so too does this claim.

**III.   MOTION FOR LEAVE TO AMEND**

At the hearing on October 8, 2008, Judge Spiegel stated that he would permit Plaintiffs to amend their complaint to clean up any confusion. Plaintiffs subsequently filed a motion for leave to amend presumably to clean up any confusion but most significantly to add a class action element. The Court recognizes that this Order disposes of some of Plaintiffs' claims as to Judge Wyler in their proposed second

amended complaint. As such, Plaintiffs' motion for leave to amend is denied. However, Plaintiffs shall have until April 20, 2009 in which to file another motion for leave to amend their complaint taking into consideration this Order and the meritorious claims, if any, of Defendants as set forth in their memoranda in opposition to the motion to amend.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Judge Wyler's motion to dismiss (Doc. 15) is hereby GRANTED, in part and DENIED, in part. Furthermore, Plaintiffs' motion for leave to amend their complaint (Doc. 45) is hereby DENIED. Plaintiffs are granted until April 20, 2009 to file another motion for leave to amend.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court